Janet A. DONILY, Individually and as Administratrix of the Estate of Lary R. Donily, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant (two cases).

Complaint of the UNITED STATES of America For Exoneration from or Limitation of Liability as Owner of U. S. COAST GUARD VESSEL 36531.

Civ. No. 71–553, 71–718, 72–725.

United States District Court,
D. Oregon.

May 17, 1974.

Pozzi, Wilson & Atchison, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., William Borgeson, Asst. U. S. Atty., Portland, Or., William E. Gwatkin, III; Richard J. Beaver, Admiralty and Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for United States of America.

## OPINION

SOLOMON, District Judge:

The United States Coast Guard Vessel CG–36531 (the 36) was towing the fishing vessel TONJA ANNE across the Tillamook Bar when the TONJA ANNE capsized and Lary Donily (Donily) and a companion drowned. Three claims filed as a result of Donily's death were consolidated for trial. Plaintiffs, the widow and daughters of Donily, first filed an action under the Suits in Admiralty Act, 46 U.S.C. § 741, and Public Vessels Liability Act, 46 U.S.C. § 781. They alleged that the members of the crew of the 36 were negligent. Later the United States filed a petition for exoneration or limitation of liability under 46 U.S.C. § 183.

When the plaintiffs took depositions, they discovered that a shore-based Coast Guard radio operator had failed to make requisite weather checks before answering the 36's inquiry about water conditions at the Tillamook Bar. Plaintiffs then filed an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674, in which they charged that the radio operator was negligent.

This case was heard on the segregated issues of liability and the right of the United States to limit.

The facts are practically undisputed. On August 10, 1970, in the face of adverse weather conditions, Donily took the TONJA ANNE, his 28-foot fishing vessel, from its moorage at Garibaldi, Oregon, and crossed the Tillamook Bar to fish for salmon in the Pacific Ocean. He was accompanied by Donald Snyder, a friend. The TONJA ANNE had engine failure and took shelter in the calm sea behind Cape Lookout. About 5:00 P.M., a trawler radioed the Coast Guard at Tillamook Station that the TONJA ANNE needed help. The Coast Guard dispatched the 36, and at about 8:00 P.M. the 36 placed the TONJA ANNE in tow. The crew aboard the 36 could see the light in the TONJA ANNE'S cabin as she was being towed through the seas. During the tow, the 36 made hourly checks with the Tillamook Bar Coast Guard Station. Near midnight the 36 radioed the Coast Guard Station for water and weather conditions at Tillamook Bar. The shore-based radio operator, without getting in touch with the Officer of the Day for a weather check, the standard Coast Guard procedure, radioed that weather conditions had been bad but were improving.

Relying on the radio operator's statement, Coxswain Morris proceeded past Buoy #1 en route to cross the Bar. There was an ebb tide which made navigation hazardous. Swells were estimated at between four and eight feet. The winds caused waves to cross the sterns of the vessels as sea conditions worsened. The 36 radioed another Coast Guard rescue vessel towing a large sailing ship that sea conditions were too rough and it should not attempt to cross the Bar.

At about Buoy #2, the lantern aboard the TONJA ANNE could no longer be seen, but the vessel's silhouette was still identifiable as the tow continued. Shortly after midnight (August 11, 1970), near Buoy #3, the TONJA ANNE capsized. Coxswain Morris felt the strain in the towing line change and the lookout saw the vessel roll over. The engineman could not see the vessel for five minutes, and when flares were sent up she was derelict. After loss of the tow, Coxswain Morris requested permission from the Coast Guard station to

cut the tow line to look for survivors. He then cut the line and sent up flares. Helicopters and vessels in the area started a search. Rescuers found portions of the TONJA ANNE, but they did not find the life-jacketed bodies of the two men for several days.

I find the shore-based Coast Guard radio operator was negligent in not consulting the Officer of the Day about a weather check before answering the 36's inquiry. I further find that this negligence was a proximate cause of the loss of the TONJA ANNE. If the 36 had known the true weather forecast the 36 could have continued to tow the TONJA ANNE northward to the calmer Illwaco Coast Guard Station. Coxswain Morris was in charge, and he could only see the water conditions within his immediate view. He relied on the radio communication that the water conditions would be improving as he advanced through the channel across the Bar. When he saw the adverse bar conditions for himself, he was already committed to his course and could no longer turn around with his tow.

The TONJA ANNE was not a seaworthy vessel. Severe dry rot was known to have existed. One could run an ice pick through the planks on the stern, and a witness testified that he had difficulty equipping the TONJA ANNE for salmon fishing because nails attaching the salmon gear would not stay in the wood. While the vessel was moored at Garibaldi, the Harbor Master testified he pumped six to eight inches of water from above the floorboards to prevent the vessel from sinking at the dock.

Lary Donily's experience on vessels was limited to approximately three summer deckhand jobs on commercial fishing boats.

I therefore find that Donily was guilty of contributory negligence which was responsible for 65 per cent of the total negligence. The allowable damages by reason of Donily's death must be reduced by that percentage.

The capsizing of the TONJA ANNE was an accident covered by the laws of admiralty. Rescue at sea is traditionally a function of admiralty. The acts of the crew of the 36 and the shore-based Coast Guard radio operator must be considered under admiralty law because of the relationship between the tort and traditional maritime activities. In United States v. Sandra & Dennis Fishing Corp., 372 F.2d 189 (1st Cir. 1967), cert. denied, 389 U.S. 836, 88 S. Ct. 48, 19 L.Ed.2d 98, the court held that when the Coast Guard commences a rescue and tow operation it owes a duty of "acceptable seamanship" to the parties being towed. The duty continues until its vessel is in danger. I find that the crew of the 36 followed "acceptable seamanship" and was not guilty of any negligence in its conduct in the tow of the TONJA ANNE or in any other respect. I further find that the 36 was seaworthy and adequate for the purpose of the rescue.

The fault here lies with the Coast Guard radio operator who gave incorrect information on his own. The radio operator was a subordinate employee whose conduct was without the privity or knowledge of the shipowner or its managing officers, here the United States government.

The radio operator's error occurred on shore, but here there was a maritime nexus—a definite relationship between the tort and traditional maritime activities. The government is therefore entitled to limit its liability under 46 U.S.C. § 183(a).

By reason of these findings, the government is entitled to limitation but not exoneration. The government is not liable under the Federal Tort Claims Act because 28 U.S.C. § 2680 specifically provides that the Federal Tort Claims Act "shall not apply to . . . (d) Any claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States."

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

A hearing will be held to determine the amount of damages and the value of the 36.